```
1                 IN THE UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                              MIAMI
                         CASE NO. 16-CV-24922
3     _____

4     OFFICER JOSE ROSADO,
                         Plaintiff
5              vs.                            March 2, 2018

6     CITY OF MIAMI GARDENS,
                         Defendant.
7
      _____
8                    MOTION FOR SUMMARY JUDGMENT

9             BEFORE THE HONORABLE MARCIA G. COOKE,

10            UNITED STATES DISTRICT COURT JUDGE
      _____
11
                        A P P E A R A N C E S
12
      FOR THE PLAINTIFF:     YECHEZKEL RODAL, ESQ
13    OFFICER JOSE ROSADO    Rodal Law PA
                             3201 Griffin Road, Suite 203
14                           Dania Beach, FL 33312
                             (954) 367-5308
15                           Chezky@rodallaw.com

16
      FOR THE DEFENDANT:     MICHAEL R. PIPER, ESQ
17    CITY OF MIAMI GARDENS  DAMIAN H. ALBERT, ESQ
                             Johnson Anselmo Murdoch, et al, PA
18                           International Building, Suite 1000
                             2455 E. Sunrise Blvd.
19                           Fort Lauderdale, FL 33304
                             (954) 463-0100
20                           Piper@jambg.com
                             Albert@jambg.com
21

22    REPORTED BY:           GIZELLA BAAN-PROULX, RPR, FCRR
                             United States Court Reporter
23                           400 North Miami Avenue, Suite 8S32
                             Miami  FL  33128
24                           (305) 523-5294
                             gizella_baan-proulx@flsd.uscourts.gov
25
```

1          <u>P R O C E E D I N G S</u>

2          *(The following proceedings were held in open court.)*

3          **THE COURT:**  For the record, appearing on behalf of

4    Officer Jose Rosado?

02:55  5          **MR. RODAL:**  Good afternoon, Your Honor, Yechezkel

6    Rodal.

7          **THE COURT:**  And appearing on behalf of the City of

8    Miami Gardens?

9          **MR. PIPER:**  Your Honor, Michael Piper and Damian

02:55  10   Albert.  I would be remiss if I did not pass along Mr. Stern's

11   respects, but he's in the middle of a trial in the Middle

12   District over in Fort Myers.

13         **THE COURT:**  I was going to say I don't know if my day

14   can go forward without the two of you being here together.

02:55  15         MR. PIPER:  He feels as badly as you, I think, today.

16         **THE COURT:**  First of all, Counsel, I want to

17   apologize, I know you all were here well and on time.  It is

18   the Court's fault for the lateness of the hour, not you.

19         Let's proceed to the Defendant's Motion for Summary

20   Judgement, Docket Entry No. 60.

21         Counsel, are you prepared to proceed?

22         **MR. PIPER:**  Yes, Your Honor.

23         **THE COURT:**  Step up to the microphone.

24         MR. PIPER:  You want me up --

02:55  25         **THE COURT:**  I think it's just a little easier with our

1  court reporter.  As you know from past experiences, the

2  acoustics in this courtroom are awful.

3          This was a very limited issue that I wanted counsel to

4  discuss, and that was the issue of municipal liability and who

02:56  5  is the final decisionmaking for purposes of the law.

6          **MR. PIPER:**  Yes, ma'am.

7          **THE COURT:**  So your client, meaning the client, made a

8  decision about Officer Rosado based upon an incident and the

9  question is, is that incident the basis of this lawsuit, the

02:56  10  firing?

11          **MR. PIPER:**  Well, the basis for the lawsuit is that

12  they're saying that incident was not really the reason he was

13  fired, but yes, Your Honor has the facts, generally.

14          The question becomes, from what I've read of your

02:56  15  order, who was the final decisionmaker, and I guess the Court

16  is interested in how we have determined that.

17          **THE COURT:**  Yes.

18          **MR. PIPER:**  And then what knowledge did he have to

19  have in order to be found to have violated the constitution as

02:56  20  a final policymaker under the -- well, I'm going to use the

21  Praprotnik case even though it wasn't cited by the plaintiff.

22          But, in any event, we know the question of who the

23  final decisionmaker is in this case is really very simple.  I'm

24  going to -- and I will -- I'm going to tell you because I'm

02:57  25  going to talk about it a few times.  Sorry that I piled

1 everything up.

2        The case that's really important here and really

3 answers all of the Court's questions, is the City of St. Louis

4 versus Praprotnik.  It's a United States Supreme Court case.

02:57  5 The citation is 485 U.S. 112.  And just a little bit of history

6 because I think it's important.

7        Two terms before Praprotnik, the Court decided a case

8 called Pembaur.  The Pembaur case stood for the general

9 proposition which, we now treat as axiomatic, that the -- that

02:58 10 the Monell proof of a custom or policy, when the decision comes

11 from a final policymaker, a single instance can be good enough,

12 because it's coming from the final policymaker.  So that's what

13 Pembaur said.

14        Pembaur was in the context of a police incident.

02:58 15 Praprotnik comes along, two terms later, and puts the Pembaur

16 case in the very specific context of an employment decision

17 allegedly based upon retaliation for the exercise of First

18 Amendment rights, which is exactly what we have here.

19        Interestingly enough, in their response the plaintiff

02:58 20 cites the Pembaur case, the general case, but does not cite the

21 Praprotnik case, which postdated Pembaur and explained Pembaur

22 in this very context.  And I think that's significant because

23 what the Praprotnik Court recognized, very specifically, and

24 this is at page 124 of the decision in the U.S. Reporter, it

02:59 25 said, very specifically recognizing Pembaur's ruling, "The

1   question of whether an official had final policymaking

2   authority is a question of state law."  And it goes on further

3   on the same page to say this:

4           "Without attempting to canvass the numberless factual

02:59   5   scenarios that may come to light in litigation, we can be

6   confident that state law," and then a parenthetical, "which may

7   include valid local ordinances and regulations, will always

8   direct a court to some official or body that has the

9   responsibility for making law or setting policies in any given

02:59   10   area of a local government's business."

11           The reason that that's significant here is because we

12   know the only record evidence is that the final decisionmaker

13   in this case was the city manager, Cameron Benson, who made the

14   ultimate decision.  We know that because the policy and

03:00   15   procedures manual of the City of Miami Gardens, which is, just

16   so that I can make sure that the record is clear for the Court,

17   it is Tab 18 of the appendix in support of our summary judgment

18   motion.

19           The policy and procedures manual provides for an

03:00   20   appellate -- administrative appellate process for -- after a

21   decision to terminate is made, and it provided step one was the

22   chief of police, and step two, the city manager, and the city

23   manager being the ultimate decisionmaker.

24           To the extent that there seems to be, or there's

03:00   25   suggested that there's any dispute about that, that's not the

1  case.  Even the plaintiff in their response, lengthy response

2  to the Motion for Summary Judgment, goes through all of the

3  people.  This is the very last page of their response and says,

4  "It ended with the city's final decisionmaker, city manager

03:01  5  Cameron Benson."

6          So there really isn't any dispute as to who the final

7  decisionmaker is.  It comes from the policy and procedures

8  manual, which is exactly what Praprotnik contemplates in those

9  terms.

03:01  10          Then the question becomes, the second question

11  identified by the Court is what was the knowledge necessary of

12  the city manager in this case in order to establish a

13  constitutional violation on the part of the city, and

14  Praprotnik speaks directly to that as well.

03:01  15          What Praprotnik very specifically says, "If the" --

16  this is at page 127 of the decision.  "If the authorized

17  policymakers prove a subordinate's decision and the basis for

18  it, their ratification would be chargeable to the municipality

19  because their decision is final."

03:02  20          So we know that what Cameron Benson would have had to

21  have known is not only the decision being -- that was

22  recommended by others, but also their motivation behind it and

23  their basis for it.

24          **THE COURT:**  So, the plaintiff maintains he was fired

03:02  25  for complaining about certain incidents within the city?

1    MR. PIPER:  Yes, ma'am.

2        **THE COURT:**  The city maintains he was fired for some

3    activities related to some specific police misconduct?

4        **MR. PIPER:**  Yes.

03:02    5        **THE COURT:**  So if the chief, who was the first level

6    decisionmaker, fired him for what he calls his First Amendment

7    activities, but places it in the guise of this other activity,

8    and unbeknownst to the final decisionmaker here, the city

9    manager, he reviews it, sees the evidence what he thinks for

03:02  10    was the ultimate conduct, and he ratifies the decision, even if

11    the intermediate decisionmaking sort of had bad motives in his

12    heart -- I probably shouldn't use that because that's a whole

13    other legal standard -- but the manager says, "Yeah, I agree

14    with you, the way he treated this particular prisoner and the

03:03  15    blah-blah-blah, I agree he should be fired."  And he fires him

16    on that basis, even though the middle person, the

17    administrative person, the chief had another motive, then the

18    decision then would not make any liability on behalf of the

19    city.

03:03  20        **MR. PIPER:**  That is exactly correct, Your Honor.  And

21    the two cases that are cited in our reply memorandum from the

22    11th Circuit, one from the Southern District and one from the

23    Northern District, stand for exactly that proposition.  There

24    is zero record evidence that Cameron Benson based his decision

03:04  25    on anything other than a review of the incident involving the

1  detainee, and Officer Rosado striking him.  There is no

2  question about that.

3          In fact, interestingly enough, in the plaintiff's own

4  statement of uncontested facts, because there's zero evidence

03:04  5  that Cameron Benson knew anything about this First Amendment

6  protected activity, alleged First Amendment protected activity,

7  and in the statement of facts by the plaintiff -- I'm trying to

8  find it, I piled everything up so it's going to take me a

9  minute -- they very specifically acknowledge in their own

03:04  10  statement of uncontested facts, that Cameron Benson was never

11  provided with what they call the letter, and the letter was a

12  letter to the assistant chief from Mr. Rosado complaining about

13  the racial profiling issues.  And they very specifically say

14  that.

03:04  15          So not only is there no evidence that Cameron Benson

16  knew anything about the alleged improper motives of the chief

17  or others, there's affirmative evidence to the contrary offered

18  by the plaintiff in this case.

19          And then the two 11th Circuit cases, one from 1996 and

03:05  20  the other from 1998, obviously, I'll put both of these in the

21  record, first is Hill versus Clifton.  The citation is 74 F.3d

22  1150.  It's out of the Northern -- it's out of the 11th

23  Circuit, but it came from the Northern District.  It involved

24  the police chief for the City of Gainesville.

03:05  25          And the interesting language and the pertinent

language, based upon what Your Honor brought up, is this:
"Hill argues that White, the city manager, was the final
policymaker as to such personnel matters and that White
ratified the actions of Clifton, the police chief.  A city may
03:05  be held responsibile where the authorized policymakers approve
a subordinate's decision, and the basis for it," and those
words are were in italics, and they quote Praprotnik.

        The Court goes on to say, "Even though White approved
of Clifton's actions, even assuming Clifton's actions were
03:06  illegal because they were based upon improper motives, the city
would not be liable because Hill has simply presented no
evidence that White approved of the basis for Clifton's
actions, the improper motives."

        And then two years later, in a case out of this
03:06  district, also decided by the 11th Circuit, Gattis, G-A-T-T-I-S
versus Brice, B-R-I-C-E, the cite being 136 F.3d 724 -- I
should back up just a minute just to make sure that I get the
page number of what I just read, although I can't find it.
I'll come back to it.

03:06          In the Gattis case, the firing -- he was demoted for
the exercise of his First Amendment rights, he claimed.  And,
again, the 11th Circuit found that the entity itself could not
be liable, stating this:  "A policymaker's approval of an
unconstitutional action can constitute unconstitutional county
03:07  policy only when the policymaker approves a subordinate's

1  decision and the basis for it."

2          And again, that language is in italics and it cites

3  Praprotnik.

4          "Gattis must, therefore, present evidence that

03:07  5  Administrator Brice not only accepted the recommendation of his

6  deputy chiefs, but knew of and ratified the improper motives

7  behind their recommendation."  And it cites the Hill versus

8  Clifton case.

9          And then that is exactly what Your Honor is talking

03:07  10  about.  And that is why the city here is entitled to judgment.

11  Cameron Benson, the city manager, there's no evidence

12  whatsoever of his -- even his knowledge of what the chief

13  allegedly was up to or the deputy chief was allegedly up to in

14  terms of retaliating against Mr. Rosado for his First Amendment

03:08  15  activity.  And, to the contrary, plaintiff affirmatively claims

16  that, you know, the letter he wrote, Cameron Benson never saw.

17  Never reviewed it.

18          **THE COURT:**  Let me hear from the plaintiff because I

19  really would like to know from the plaintiff what record

03:08  20  evidence is there to show that the city manager had any

21  knowledge of the letter written to the chief or the deputy

22  chief prior to his decision to ratify the firing.

23          **MR. RODAL:**  Sure, Your Honor.  If I may, first, the

24  reason why this wasn't so clear in my response, and I

03:08  25  apologize, was because in the motion the city never raised any

of this.  The city left in what seems to be the standard

pleading regarding custom and policy.  This was never a custom

and policy case.  I regret that I didn't properly brief it

foreseeing that, but that's why it wasn't addressed, because it

03:09  wasn't raised.

**THE COURT:**  Well, I think what I did was I

specifically sent out saying --

**MR. RODAL:**  Right.

**THE COURT:**  -- I have a question concerning this

03:09 10  ratification issue, Counsel, thinking that may be the case,

that maybe you all were thinking of a different issue than what

the Court was, please tell me what that would be.

**MR. RODAL:**  Sure.

**THE COURT:**  The city has responded basically with law

03:09 15  and their facts that they say, yeah, this letter is out there,

this letter happened.  But when Benson signed off on the

firing, he knew nothing about the letter.

**MR. RODAL:**  Right.

**THE COURT:**  He had no -- and I want to know what in

03:09 20  the record supports your contention that Benson ratified the

firing based upon the plaintiff's -- a violation of plaintiff's

First Amendment right.

**MR. RODAL:**  Specifically addressing that question, I

direct the Court to plaintiff's statement of material facts.

03:09 25  And that is specifically paragraphs 129 through 133, which is

1   based on Mr. Benson's deposition, which I took.

2           Now, just to make the Court --

3           **THE COURT:**  And what does Mr. Benson say that he knew

4   at the time he ratified the firing?

03:10   5           **MR. RODAL:**  Right.  So I'm going to go back to the

6   previous section in my brief saying that this is a

7   circumstantial evidence case.  I cannot point to the Court --

8   just like I didn't throughout the case -- point to anyone

9   specifically and say they knew this, they did this because of

03:10  10   this.  And the reason why I filed the video in the natural --

11  in the native format is because, for the Court to see that

12  video and see that the mistakes, which I will point out in the

13  brief, comes down to one word.  It's just simply inconceivable

14  that a man with a military and police background of Officer

03:10  15  Rosado would be fired.

16          Now I asked Cameron Benson specific questions.  For

17  example, paragraph 129 of plaintiff's statements of facts which

18  is, again, based on the deposition, he told me that he did not

19  review the video, despite the fact that it is actually a

03:11  20  declaration that he filed, which is Appendix 3 to plaintiff --

21  to defendant's statement, which is Docket Entry 44-3, he

22  repeatedly referenced the video.

23          Now when I deposed him --

24          **THE COURT:**  Is he referencing the video because the

03:11  25  chief references the video?

1     **MR. RODAL:**  I have no idea.  He says that he reviewed

2  the video multiple times.  But when I asked him, he said he

3  didn't review it.  He gave me a list of things that he

4  reviewed.  And then in paragraph 130 of statement of fact --

03:11  5     **THE COURT:**  But at no time does he say that he was

6  aware of the letter with the complaint to the chief and the

7  deputy chief, does he?

8     **MR. RODAL:**  Right, but this is just about the letter.

9  The letter is one aspect.  For example --

03:11  10     **THE COURT:**  But isn't that what your client is

11  claiming?  Your client is claiming, I was fired because I

12  exercised my First Amendment right to complain about certain

13  issues going on in the city and the department.

14     That's his claim.  Right?

03:12  15     **MR. RODAL:**  Yes, but --

16     **THE COURT:**  And -- wait a minute -- and he claimed

17  that that's why the chief fired him, not the video.  Right?

18     **MR. RODAL:**  Correct.

19     **THE COURT:**  So the city manager gets whatever from the

03:12  20  chief saying, I fired Rosado because he used excessive force or

21  handled a prisoner the wrong way.  That's what Benson knows

22  when he fires -- when he ratifies the decision to fire Rosado.

23  Right?

24     **MR. RODAL:**  Right.

03:12  25     **THE COURT:**  Does he know about the letter?

1    **MR. RODAL:**  I don't have any evidence that he knew

2    about the letter.  But, again, the Court is focusing on the

3    letter and --

4        **THE COURT:**  Because that's what your case is based on,

5    is the exercise --

6        **MR. RODAL:**  Right.

7        **THE COURT:**  -- or is there other First Amendment

8    behavior that your client engaged in that would be protected

9    that Benson knew of and said, I'm going along with the guise of

03:12 10   the chief.  I'm just going to cover the chief here and I'm

11   going to have what appears to be a justifiable firing based on

12   unjustifiable means.

13       **MR. RODAL:**  Yes, Your Honor.  Again, I just want to

14   stress this.  The letter is just one piece of the protected

03:13 15   speech that Officer Rosado gave.  For example --

16       **THE COURT:**  But what protected speech did Benson know

17   about?

18       **MR. RODAL:**  Paragraph 77, Sergeant Mason, on the

19   second page, Your Honor, 77, plaintiff's statement of facts.

03:13 20      Mason, Sergeant Mason said that Rosado talked to him

21   about his concerns and he shared it with Chapman and their

22   supervisor.  So to put it all in context --

23       **THE COURT:**  But the sergeant is in the police

24   department.  Right?

03:13 25       **MR. RODAL:**  Yes.

1            **THE COURT:**  Chapman is in the police department?

2            **MR. RODAL:**  Yes.

3            **THE COURT:**  Who in the city manager's office knew

4     about the protected speech?

03:13    5            **MR. RODAL:**  Right.  So I think one important key fact

6     is that on June 23rd, 2015, the Sampson case, which is

7     referenced throughout my brief, was settled when Mr. Benson

8     represented the city personally.  The very next day is when he

9     signed it -- when he -- the final termination, the very next

03:14   10    day.

11            Now I want to point out that the administrative leave

12    occurred March 27th.

13            **THE COURT:**  But is there indication to Sampson that

14    Rosado was the person that sets up this information about the

03:14   15    police behavior in Miami Gardens?

16            **MR. RODAL:**  That's key.  Rosado filed an affidavit

17    which his declaration in the Sampson case, which we're going to

18    argue also was protected speech, and we're going to argue that

19    we believe that a reasonable jury could find that that

03:14   20    affidavit really was what led the city to settle Sampson and it

21    was handled by my esteemed closing counsel.

22            But, again, this was Benson himself.

23            Now we're talking about context.  Mr. Benson told me

24    that he took over as the city manager in October of 2013.  The

03:15   25    Sampson case was filed November.  The Asia case, which Your

1   Honor presided over, was a $2,000,000 verdict in the city, that

2   was filed in December 2014.  It was removed January 10th.

3           Now, Officer Rosado had the bad fortune of sending his

4   letter to -- January 7th, right after these two cases were

03:15   5   filed.  So, of course, the city -- I'm not going to be able to

6   find proof that Cameron Benson knew about it.  And I want to

7   address specifically the Court's question about that, that you

8   asked opposing counsel, and this is specifically Justice

9   Brennan's concurrence in plurality, I should point out,

03:15   10  plurality, and Justice Brennan specifically said that this is

11  -- we're setting up a way for municipals to avoid liability,

12  which means if we protect the city manager and just tell him,

13  "Just sign this," then that is a way for them to escape

14  liability.

03:16   15          What we intend to show to a jury, and what we believe

16  that the jury will reasonably believe, is that there simply is

17  no other explanation that Cameron Benson had to fire him.

18          In fact, Cameron Benson --

19          **THE COURT:**  But does the law say that?  Does the law

03:16   20  say there must be no other reasonable explanation other than

21  the knowledge of this letter for the firing, or does the law

22  say there has to be, in order to get past summary judgment,

23  that there must be a genuine issue in dispute of material fact?

24  And the fact in dispute here would be did a decisionmaker know

03:16   25  about the protected conduct such that this was all pretext,

1  because what is the date of the incident in the van?

2          MR. RODAL:  February 28th, 2014.

3          THE COURT:  What day does the city manager join the

4  City of Miami Gardens?

03:16  5          MR. RODAL:  Well, he joined as assistant city manager

6  in April of 2013, and became city manager in October of 2013,

7  and as the Court may recall, after --

8          THE COURT:  And when do the disciplinary proceedings

9  start with Officer Rosado.

03:17  10         MR. RODAL:  He was placed on administrative leave on

11 March 27th, 2014.  But I have a specific quote, Your Honor, for

12 the last question.

13         The 11th Circuit held in Farley versus Nationwide

14 Mutual Insurance Company, cited at 197 F.3d 1322 and 1337, and

03:17  15 I quote, "This belief on the defendant's proffer of reasons

16 together with the prima facie case, is sufficient

17 circumstantial evidence to support a finding of discrimination.

18 Therefore, a plaintiff is entitled to survive summary judgment

19 if there is sufficient evidence to demonstrate the existence of

03:17  20 a genuine issue of fact as to the truth of each" --

21         THE COURT:  Slow down, Counsel.  Slow down.  Slow

22 down.

23         MR. RODAL:  Let me the start from the last sentence.

24         "Therefore, a plaintiff is entitled to survive summary

03:17  25 judgment if there is sufficient evidence to demonstrate the

1  existence of a genuine issue of fact as to the truth of each of

2  the employer's proffered reasons for its challenged action."

3          THE COURT:  That's what I'm asking for.

4          MR. RODAL:  Right.

03:18  5          THE COURT:  I'm asking -- this is not a situation,

6  summary judgment.  The Court doesn't decide the credibility of

7  a witness based upon fact.  I need a fact.  I don't have where

8  you even say there can be an inference.

9          You're asking me to draw the following inference:  The

03:18 10  manager was hired in October 2013, as assistant manager.  He

11  becomes manager in February 2014.  Right?

12          MR. RODAL:  He was hired in April of 2013 as assistant

13  and became manager in October of 2013.

14          THE COURT:  And your client's incident was?

03:18 15          MR. RODAL:  February 2014.

16          THE COURT:  So the incident that predates him --

17          MR. RODAL:  Your Honor, it was postdate.  He was

18  October 2013.  The two lawsuits were filed the end of 2013.  My

19  client sent the letter in January of 2014.  The event incident

03:19 20  occurred in February of 2014, and then the final dismissal --

21          THE COURT:  When does -- when does Benson become city

22  manager?

23          MR. RODAL:  October 2013.

24          THE COURT:  No, he becomes assistant city manager.

03:19 25          MR. RODAL:  No, April 2013.  He was working under

1   Danny Crew who was the city manager then.  I'm fairly certain

2   that he told me that October 2013 he became -- in fact, I

3   remember him saying that he got into this in the middle when

4   everything crashed, and he was --

03:19   5        THE COURT:  No, no.  But what I have to do is I have

6   to make an inference on the inference of the dates.  I don't

7   have any record evidence that the manager knew about the

8   complaints.

9            MR. RODAL:  Right.

03:19   10       THE COURT:  And that the complaints were the basis for

11   the firing.

12           MR. RODAL:  Your Honor, what Praprotnik really stands

13   for is the ratification doctrine.  That's really what

14   Praprotnik is and its progeny, and the 11th Circuit is one of

03:20   15  the few circuits that has limited law on Praprotnik.

16           But what Praprotnik says is the ratification here.  So

17   I'm not saying that -- I don't know that Benson was involved

18   from the very beginning and said, you know what, get rid of him

19   because of this.  He may very well have been.  What I'm saying,

03:20   20  we certainly have indications that majors, three majors and the

21   chief were involved in this, and when it came to Benson, he

22   ratified that knowing the reason why.

23           I can't tell you, I don't have a recorded conversation

24   where the chief told him, you know what, this guy is going

03:20   25  around town filing affidavits, we need to get rid of him.  I

1  don't have that.

2      What I do have is when I asked Major Benson why he was

3  fired, he told me because it was excessive use of force.  No

4  one ever, in multiple depositions, had ever raised that issue

03:21  5  before.  He had no idea what this was about, even though he had

6  assumedly been prepared for it.  He told me he didn't review

7  the video.  He didn't know anything about the evidence.  He

8  never met with Rosado, never once knew his name.

9      **THE COURT:**  Is that who fired him?  I mean, this is

03:21  10  totally an administrative review process.  Right?  Rosado gets

11  the package or information from the chief that he's been fired.

12  Right?

13      **MR. RODAL:**  Right.

14      **THE COURT:**  And the chief tells him, "You've been

03:21  15  fired based upon this incident in the van."  Right?

16      **MR. RODAL:**  Correct.

17      **THE COURT:**  Whether it involves lying about the

18  incident, excessive force related to the incident, the chief

19  says it's that incident that's the crux of your firing.

03:21  20      **MR. RODAL:**  Correct.

21      **THE COURT:**  When it goes to Benson from the chief,

22  Benson says -- the chief says, "We're firing this guy because

23  of the incident in the van."

24      **MR. RODAL:**  Yes.

03:21  25      **THE COURT:**  There's no extraneous stuff where it said

1  even if -- you know, I'm really being fired because of this.

2  I'm really being fired because of that.

3       You want me to infer that because the city manager was

4  aware of a settlement that there was -- there were allegations

03:22  5  about the police's behavior, the Samuels (sic) case concerning

6  the behavior at the Quik Stop, and/or the Asia case, that he

7  then reaches back and says, I'm now firing Rosado for his

8  exercising his First Amendment right to the complaint.

9          **MR. RODAL:**  Right.  What I'm saying --

03:22  10          **THE COURT:**  But you realize all the inferences there

11  are here?

12          **MR. RODAL:**  Right, right, but --

13          **THE COURT:**  So there's got to be a dispute about a

14  fact.

03:22  15          **MR. RODAL:**  Right.

16          **THE COURT:**  You are asking me to make an inference of

17  -- based upon inference.  I should infer that there is a

18  disputed issue of fact based upon the inferences from these

19  other facts.

03:23  20          **MR. RODAL:**  Your Honor, step one is to show that the

21  proffered reason for the termination was merely a pretext for

22  the true discriminatory purpose.  So the question of fact, and

23  I guess, respectfully, I don't think the question really

24  changed prior to this hearing or after.  It's the same

03:23  25  question.  Did the city fire, whether it was Mr. Benson,

1    whether it was the chief of police, it's really the same

2    question.

3         THE COURT:  No, it's not.  That's the reason why I

4    asked for the briefing.  If Rosado thought -- excuse me -- if

03:23  5    the chief fires Rosado for being a pain, for making these

6    complaints, for not respecting his authority in making these

7    decisions, but he writes on a sheet of paper, I am firing this

8    person because of an incident involving a van, whether it's

9    excessive force, whether it's relying on the report.

03:24  10        If that's what he says, and that's what he tells the

11   chief, and the chief says, "Well, you know, I agree with you,

12   we wouldn't keep an officer who lies in a report or lied about

13   an arrest."  So this is what counsel is telling me.

14        Mr. Sterns (sic) is saying when you look on page 127,

03:24  15   if the authorized policymaker, that would be the city manager,

16   approves a subordinate's decision and the basis for it, their

17   ratification would be chargeable to the municipality.

18        MR. RODAL:  Right.

19        THE COURT:  Okay, but the basis for the decision was

03:24  20   the incident in the van.

21        MR. RODAL:  Well, that's what I'm mis-agreeing with.

22   And that's exactly the question of fact.  And the reason why I

23   say that is --

24        THE COURT:  You disagree with that, but I have no

03:24  25   record evidence to support your disagreement other than the

1 inferences that you want me to make.

2          **MR. RODAL:**  And I'm raising numerous inferences.

3 Again, as the 11th Circuit has pointed out, and numerous

4 districts have pointed out, these cases of pretextual firing

03:25  5 come down to inferences.

6          For example, Mr. Benson, he couldn't tell me -- he

7 couldn't differentiate whether it was either willfully intended

8 to misrepresent his report, what he said willfully meant, that

9 he willfully wrote it down, that when he took down his pen to

03:25 10 paper that was willfully.  That's why they fired him.

11          It was clear when you read the deposition transcript,

12 when the Court will read the deposition transcript, the

13 specific questions that I asked, and the Court will read the

14 statement of facts, it's clear that Cameron Benson had no idea

03:25 15 about any of this event.

16          So now the question --

17          **THE COURT:**  But did he have to?

18          **MR. RODAL:**  Now the question is, so why did he fire

19 him?

03:25 20          **THE COURT:**  Because his chief told him, "This guy

21 isn't a good police officer.  He's using excessive force and

22 he's not filling out the reports truthfully."

23          **MR. RODAL:**  That is absolutely one possibility.

24          Another possibility is the chief told him, "Hey, you

03:25 25 know, we're already dealing with these two officers, this guy

1    is filing affidavits, I need you to do this, I need you to

2    ratify --

3             **THE COURT:**  Where in the record can I point to?

4    That's what I keep going back to.

03:26   5             Is there somebody else, some other witness, a third

6    party, a secretary who overhears a conversation in the

7    bathroom?  Do I have anyone I can tag and say, well, (inaud.)?

8             The jury will have to decide who to believe and what

9    to believe.  I'm going to have to ask a jury, listen, what you

03:26  10   have to do is you have to find somewhere in the record that you

11   haven't been able to find, Counsel, you have to find somewhere

12   that the city manager not only knew about these complaints, but

13   that he decided to fire Rosado because of them.

14            **MR. RODAL:**  Yes, Your Honor.  If I had a recording of

03:26  15   an overt conversation, I assure you that would be front and

16   center.  That's why I focused so much of my brief on context,

17   on these quasi-judicial inferences.

18            Now, again, it comes down to the fact that Cameron

19   Benson knew about these cases, he was involved in the

03:27  20   settlement the day before, he essentially knew about --

21   although this is a question of fact whether he knew about

22   Rosado.  Let's just say for a second that a reasonable jury

23   could infer that Benson did indeed know about what Rosado was

24   up to.  He knew he was involved in this.  The city was facing

03:27  25   tremendous liability.  There was multiple officers, not just

the Sampson and Asia cases, there were multiple other lawsuits

that are still pending to this day, others have been dismissed,

others have been settled.

So the city manager is in charge of it and says, you

03:27  know, something comes through his desk, and I don't know the

conversation that happened.  I wasn't there.  And I don't have

a recording of it, I wish I did.  But I believe that a

reasonable jury could find, based on all these inferences, that

when Cameron Benson said he was ratifying the termination based

03:27  on the evidence, it was merely a pretext, and Cameron Benson

was ratifying the decision to get rid of him because of his

complaining, which is protected speech.

And, Your Honor, you talked about before about not

respecting authority.  That is not why we're here.  We're here

03:28  specifically about Officer Rosado complaining about the racial

discrimination and the racial policy, which the jury in

(inaud.) found, that there was a custom and policy of racial

discrimination.

So all we're saying is let the jury decide, did

03:28  Cameron Benson, did he approve ratifying the action based on

the evidence incident or did he ratify it because he did, in

fact, know about Officer Rosado's action, and the reason why we

even give that to the jury is because there simply is no way

that Cameron Benson fired him because of that video.

03:28  THE COURT:  Well, I'm looking at -- Counsel, the

1 hearing about his termination took place January 15th, 2015.

2 Correct?

3        **MR. RODAL:**  Yes, Your Honor.

4        **THE COURT:**  And the next day, which would have been

03:28 5 January 16th, the police upheld the recommendation for his

6 termination.

7        **MR. RODAL:**  Right.

8        **THE COURT:**  He doesn't file the affidavit in the -- in

9 one of the unlawful discrimination cases pending against the

03:29 10 city until January 22nd.

11        **MR. RODAL:**  Right.  But let's say at that point we

12 still have municipal liability because the final decisionmaker

13 hasn't ratified yet.  So that all is leading up -- that all

14 gets us to this point where, again, where Chief Miller and

03:29 15 Macon (ph.) and all the majors knew about this and that's why

16 they decided to fire him, but the real question is, and that's

17 why we're here, is how do we get to municipal liability?

18        So all that -- all that leading up until Cameron

19 Benson gets the file really is what we're going to show to the

03:29 20 jury, is that there's simply nothing here.  And coupled with

21 the fact that we're going to show as we showed in the statement

22 of facts, the outright, bold-faced lies that other judges have

23 found were deliberate misrepresentations, that the City of

24 Miami Gardens really had no regard for the truth.

03:30 25        And if they had treated -- again, this is not a

1    disparate treatment case, but if Miami Gardens could show, you

2    know what, any officer that lied we fired, and that would be

3    another thing, but that's another major part of this case.  We

4    showed, we have presented documents of bold-face lie after lie,

03:30    5    straight up statement of facts are replete with it, and no

6    officers were disciplined.

7            So if Cameron Benson were to say, you know what, we

8    have a strict policy, we don't allow lying, I agree this is a

9    much different case.  But all these inferences, I agree, one of

03:30    10    these inferences is, Your Honor, and I believe that I've given

11    the Court five or six inferences, that piled up upon each

12    other, at least could lead a reasonable jury to say, you know

13    what, I'm not buying this pretext.  I'm not buying this case

14    because he said, "We fell from the ground."  If he had said,

03:30    15    "We fell in the van to the ground," one word off, but I'm just

16    not buying the pretext.

17            All we're asking is for the Court to allow the jury to

18    say did Cameron Benson fire him because he believed the chief's

19    report or did he fire him because he knew, and it's my burden

03:31    20    to prove to the jury.

21            **THE COURT:**  But counsel for the defendant sort of

22    agrees with you.  He said that the chief could have had all had

23    the pretext in the world.

24            **MR. RODAL:**  Right.

03:31    25            **THE COURT:**  The chief could be the most pretext person

1  to walk planet earth, but did the manager have pretext?

2       MR. RODAL:  Right, and this is where Praprotnik and

3  the ratification comes in.  I want to be offered the

4  opportunity to tell the jury, listen, I think it's clear, at

03:31  5  least in my position, that the chief knew about this and the

6  majors, et cetera, everyone below.

7       THE COURT:  I'll give you that.  I will give you that.

8  Everyone in the police department wanted Rosado out because of

9  what he was saying.

03:31  10       MR. RODAL:  And I would like the opportunity to show

11  the jury that when it came to Cameron Benson, there simply

12  could be no explanation that he ratified it based on the

13  pretext, because he looked into it.  According to his own

14  declaration, he saw the video, he did all these things, and my

03:32  15  case is based on the fact that when the jury sees that video

16  and looks at the report and looks at everything, that it just

17  doesn't add up.

18       THE COURT:  They can say that.  They can say, you know

19  what, this is the worst chief to ever walk the planet earth.

03:32  20  He lied.  He lied to the manager.  He totally pretexted this

21  firing.  But did the manager know?

22       MR. RODAL:  Right, so we're coming back to this, and I

23  understand --

24       THE COURT:  Because that's the ultimate question, was

03:32  25  did the manager know?

1        **MR. RODAL:** Right.  Again, I don't have the smoking

2   gun to give you.  I wish I did, but --

3        **THE COURT:** I don't need a smoking gun, I just need a

4   gun.

03:32   5        **MR. RODAL:** But I'll give you -- I am giving the Court

6   inference after inference based on Benson's own recollections

7   of the case and his own watching the video, based on his own

8   statements of why he allegedly fired him.  Based on the way

9   he's handled other police officers.  Based on all these things

03:33   10   going on.  Based on his knowledge of what was going on with

11   different lawsuits.  Based on the fact that he had settled the

12   very case the day before, the very case that Officer Rosado

13   filed a declaration, again, all these things, one of them, two

14   of them, may be not enough, but all these things adding up are

03:33   15   certainly enough to get me over the threshold as I pointed out

16   in the brief at page 25.

17        **THE COURT:** Let me hear from Mr. Sterns (sic).

18   Mr. Sterns (sic), can inferences on inferences create a genuine

19   issue of material fact to survive summary judgment?  I mean,

03:33   20   you didn't say it, and I don't expect you to admit this on

21   behalf of your client, but let's say that the entire firing was

22   a pretext on behalf of the city, on behalf of the police

23   department.  And if I were to examine each of these inferences,

24   the fact that the city manager signs off on the firing only a

03:34   25   few days after there's a settlement in the Sampson or Simpson,

1  I can't remember exactly the name now, that he is aware in that

2  case that Officer Rosado has filed an affidavit in preparing

3  the case for settlement.

4      Would that be sufficient then to say that there's

03:34  5  ratification here?

6      **MR. PIPER:**  No.  In fact, first of all, Your Honor's

7  well aware, because you conduct trials every day, about the

8  peer reviewing of inferences and its impropriety.  But even

9  pyramiding of inferences, if it were allowed, would need to

03:34  10  have some factual basis to begin with.

11      And in this case, there is zero evidence that Cameron

12  Benson ever -- and, I'm going to assume, for purposes of this

13  discussion, that the chief's motives were bad and that they

14  were anti-First Amendment, if I can use that term.  And -- but

03:35  15  there's got to be something to say that -- and case law is very

16  clear -- that the city manager not only ratified the decision

17  that had been made by the chief, but also ratified the chief's

18  basis for the decision.

19      What's been discussed here is, oh, there was a

03:35  20  settlement of a lawsuit and Piper lost $2,000,000 in Asia and

21  whatever else.  The responses were replete with everything my

22  firm did as well, and I'm ignoring all of that.

23      Oh, by the way, Mike Piper.  You called me Mr. Sterns.

24      **THE COURT:**  See, I've begun to think of you two as one

03:35  25  person.

1      **MR. PIPER**:  I would like that, but I'm not.

2           In any event, Judge, and I'm sorry to lighten it up

3   this way, but what plaintiff's attorney has told you is, well,

4   there are all these possible inferences that you can make and

03:36  5   there's no other explanation, that was his term.

6           Yes, there is.  There's at least one other, not that

7   we have to show this, but I think I ought to present this to

8   the Court, and this is very well discussed in our motion and

9   reply as well.

03:36  10          Plaintiff, throughout the course of this entire

11  administrative appellate process, not one time did he ever say

12  to anyone, including in his written memoranda in support of his

13  position to not get terminated, did he ever say, "This is a

14  bunch of nonsense and I'm being fired because I've complained

03:36  15  about racial profiling or exercised my First Amendment rights."

16  He never once said it, never.  So there's at least one other

17  explanation.

18          All he ever did was argue about whether the video, his

19  reports were false, and whether he beat the guy up.  That's

03:36  20  what he argued about.  So there's at least one other

21  explanation regarding that.

22          I think, more importantly than that, though, two

23  things, or one thing, and that is, this case still is governed

24  by Praprotnik, specifically, and by the two 11th Circuit cases

03:37  25  that we cite.

1          And, in fact, the Gattis case, and I should probably

2   back up just to make sure we have a complete record.  The

3   excerpt that I read from the Hill versus Clinton (sic) case

4   came from -- or Clifton case, I'm sorry -- came from 74 F.3d at

03:37  5   1152.  That's where that quote came from.

6          And what I read from the Gattis versus Brice case came

7   from 136 F.3d at 726 and 727.

8          But here I'm reading from 726, because it specifically

9   addresses what the Court asked about the inferences.  And it

03:37  10   says this:  "Gattis claims that the record permits the

11   inference that his speech was a factor in Administrator Brice's

12   decision.  The decision Brice made was to adopt the

13   recommendation of his deputy chiefs.  There is nothing in the

14   record to suggest that Brice's mere acceptance of the list of

03:38  15   three poorly-rated battalion chiefs was in any way retaliatory.

16   Brice did not generate the list, he did not himself evaluate

17   Gattis and the two other individuals recommended for

18   reassignment.  He simply made the decision to rely on the

19   experience and judgment of the other chiefs," and I'll leave

03:38  20   the names out.

21          The point being that the exact inferences that

22   plaintiff now wants to urge the Court to be presented to a jury

23   were disallowed in this case, controlling law in the 11th

24   Circuit.

03:38  25          THE COURT:  Thank you.

1          Counsel is aware that I specifically had concerns in

2     this matter about the issue related to ratification, which is

3     why I asked for additional discussion as well as the oral

4     argument here today.  I find that the defendants have met their

03:39   5     burden for purposes of the Motion For Summary Judgment, Docket

6     Entry 60.

7          Specifically, and I'm using -- I'm certainly I'm going

8     to mispronounce it -- the Praprotnik case and the quote from

9     page 127 that counsel discussed and he also discussed in his

03:39  10     papers.  "When a subordinate's decision is subject to review by

11     the municipality's authorized policymakers, the policymakers

12     have retained the authority to measure the official's conduct

13     for conformance with their policies.  If the authorized

14     policymakers approve a subordinate's decision, and the basis

03:39  15     for it, their ratification will be chargeable."

16          I have no factual evidence in this record that the

17     manager approved, and that's using what we have discussed for

18     this hearing only, that the chief fired Rosado for First

19     Amendment rights, exercising his First Amendment rights, I have

03:40  20     no evidence of that and, more importantly, what counsel for

21     plaintiff is asking me to do is not make one inference, but to

22     take an inference and make more inferences of it without

23     supporting facts.  Case law doesn't allow that.

24          So for the record, Docket Entry Number 60 is granted,

03:40  25     the defendant's motion for summary judgment releasing the City

1  of Miami Gardens.

2          Thank you, Counsel.

3          **MR. RODAL:**  Thank you, Your Honor.

4          **THE COURT:**  Counsel, can we go back on the record just

03:41  5  briefly?  I just want to say that I do agree with the plaintiff

6  that the 11th Circuit doesn't have a lot of law in this area,

7  and if I'm wrong, I would hope that the plaintiff would appeal

8  and that the 11th Circuit would give the Court additional

9  guidance.

03:41  10          Thank you.

11

12          (Thereupon, the above hearing was concluded.)

13

14                    *          *          *

15

16

17

18

19

20

21

22

23

24

25

1

## C E R T I F I C A T E

2

3          I hereby certify that the foregoing is an accurate

4    transcription of the proceedings in the above-entitled

5    matter.

6

8        03/14/2018

9    DATE COMPLETED          GIZELLA BAAN-PROULX, RPR, FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$2,000,000** [2] - 16:1, 30:20

## 0

**03/14/2018** [1] - 35:8

## 1

**1000** [1] - 1:18
**10th** [1] - 16:2
**112** [1] - 4:5
**1150** [1] - 8:22
**1152** [1] - 32:5
**11th** [12] - 7:22, 8:19, 8:22, 9:15, 9:22, 17:13, 19:14, 23:3, 31:24, 32:23, 34:6, 34:8
**124** [1] - 4:24
**127** [3] - 6:16, 22:14, 33:9
**129** [2] - 11:25, 12:17
**130** [1] - 13:4
**1322** [1] - 17:14
**133** [1] - 11:25
**1337** [1] - 17:14
**136** [2] - 9:16, 32:7
**15th** [1] - 26:1
**16-CV-24922** [1] - 1:2
**16th** [1] - 26:5
**18** [1] - 5:17
**197** [1] - 17:14
**1996** [1] - 8:19
**1998** [1] - 8:20

## 2

**2** [1] - 1:5
**2013** [11] - 15:24, 17:6, 18:10, 18:12, 18:13, 18:18, 18:23, 18:25, 19:2
**2014** [7] - 16:2, 17:2, 17:11, 18:11, 18:15, 18:19, 18:20
**2015** [2] - 15:6, 26:1
**2018** [1] - 1:5
**203** [1] - 1:13
**22nd** [1] - 26:10
**23rd** [1] - 15:6
**2455** [1] - 1:18
**25** [1] - 29:16
**27th** [2] - 15:12, 17:11
**28th** [1] - 17:2

## 3

**3** [1] - 12:20
**305** [1] - 1:24
**3201** [1] - 1:13
**33128** [1] - 1:23
**33304** [1] - 1:14
**33312** [1] - 1:14
**367-5308** [1] - 1:14

## 4

**400** [1] - 1:23
**44-3** [1] - 12:21
**463-0100** [1] - 1:19
**485** [1] - 4:5

## 5

**523-5294** [1] - 1:24

## 6

**60** [3] - 2:20, 33:6, 33:24

## 7

**724** [1] - 9:16
**726** [2] - 32:7, 32:8
**727** [1] - 32:7
**74** [2] - 8:21, 32:4
**77** [2] - 14:18, 14:19
**7th** [1] - 16:4

## 8

**8S32** [1] - 1:23

## 9

**954** [2] - 1:14, 1:19

## A

**able** [2] - 16:5, 24:11
**above-entitled** [1] - 35:4
**absolutely** [1] - 23:23
**acceptance** [1] - 32:14
**accepted** [1] - 10:5
**according** [1] - 28:13
**accurate** [1] - 35:3
**acknowledge** [1] - 8:9
**acoustics** [1] - 3:2
**action** [4] - 9:24, 18:2, 25:20, 25:22
**actions** [4] - 9:4, 9:9, 9:13
**activities** [2] - 7:3, 7:7
**activity** [4] - 7:7, 8:6, 10:15
**add** [1] - 28:17
**adding** [1] - 29:14
**additional** [2] - 33:3, 34:8
**address** [1] - 16:7
**addressed** [1] - 11:4
**addresses** [1] - 32:9
**addressing** [1] - 11:23
**administrative** [6] - 5:20, 7:17, 15:11, 17:10, 20:10, 31:11
**Administrator** [2] - 10:5, 32:11
**admit** [1] - 29:20
**adopt** [1] - 32:12
**affidavit** [4] - 15:16, 15:20,

26:8, 30:2
**affidavits** [2] - 19:25, 24:1
**affirmatively** [1] - 10:15
**afternoon** [1] - 2:5
**agree** [6] - 7:13, 7:15, 22:11, 27:8, 27:9, 34:5
**agreeing** [1] - 22:21
**agrees** [1] - 27:22
**al** [1] - 1:17
**Albert** [1] - 2:10
**ALBERT** [1] - 1:17
**albert@jambg.com** [1] - 1:20
**allegations** [1] - 21:4
**alleged** [2] - 8:6, 8:16
**allegedly** [4] - 4:17, 10:13, 29:8
**allow** [3] - 27:8, 27:17, 33:23
**allowed** [1] - 30:9
**Amendment** [14] - 4:18, 7:6, 8:5, 8:6, 9:21, 10:14, 11:22, 13:12, 14:7, 21:8, 30:14, 31:15, 33:19
**Anselmo** [1] - 1:17
**answers** [1] - 4:3
**anti** [1] - 30:14
**anti-First** [1] - 30:14
**apologize** [2] - 2:17, 10:25
**appeal** [1] - 34:7
**appearing** [2] - 2:3, 2:7
**appellate** [3] - 5:20, 31:11
**Appendix** [1] - 12:20
**appendix** [1] - 5:17
**approval** [1] - 9:23
**approve** [3] - 9:5, 25:20, 33:14
**approved** [3] - 9:8, 9:12, 33:17
**approves** [2] - 9:25, 22:16
**April** [3] - 17:6, 18:12, 18:25
**area** [2] - 5:10, 34:6
**argue** [3] - 15:18, 31:18
**argued** [1] - 31:20
**argues** [1] - 9:2
**argument** [1] - 33:4
**arrest** [1] - 22:13
**Asia** [4] - 15:25, 21:6, 25:1, 30:20
**aspect** [1] - 13:9
**assistant** [5] - 8:12, 17:5, 18:10, 18:12, 18:24
**assume** [1] - 30:12
**assumedly** [1] - 20:6
**assuming** [1] - 9:9
**assure** [1] - 24:15
**attempting** [1] - 5:4
**attorney** [1] - 31:3

**authority** [4] - 5:2, 22:6, 25:14, 33:12
**authorized** [5] - 6:16, 9:5, 22:15, 33:11, 33:13
**Avenue** [1] - 1:23
**avoid** [1] - 16:11
**aware** [5] - 13:6, 21:4, 30:1, 30:7, 33:1
**awful** [1] - 3:2
**axiomatic** [1] - 4:9

## B

**BAAN** [2] - 1:22, 35:9
**BAAN-PROULX** [2] - 1:22, 35:9
**background** [1] - 12:14
**bad** [3] - 7:11, 16:3, 30:13
**badly** [1] - 2:15
**based** [25] - 3:8, 4:17, 7:24, 9:1, 9:10, 11:21, 12:1, 12:18, 14:4, 14:11, 18:7, 20:15, 21:17, 21:18, 25:8, 25:9, 25:20, 28:12, 28:15, 29:6, 29:7, 29:8, 29:9, 29:10, 29:11
**basis** [14] - 3:9, 3:11, 6:17, 6:23, 7:16, 9:6, 9:12, 10:1, 19:10, 22:16, 22:19, 30:10, 30:18, 33:14
**bathroom** [1] - 24:7
**battalion** [1] - 32:15
**Beach** [1] - 1:14
**beat** [1] - 31:19
**became** [3] - 17:6, 18:13, 19:2
**become** [1] - 18:21
**becomes** [4] - 3:14, 6:10, 18:11, 18:24
**BEFORE** [1] - 1:9
**begin** [1] - 30:10
**beginning** [1] - 19:18
**begun** [1] - 30:24
**behalf** [6] - 2:3, 2:7, 7:18, 29:21, 29:22
**behavior** [4] - 14:8, 15:15, 21:5, 21:6
**behind** [2] - 6:22, 10:7
**belief** [1] - 17:15
**below** [1] - 28:6
**Benson** [42] - 5:13, 6:5, 6:20, 7:24, 8:5, 8:10, 8:15, 10:11, 10:16, 11:16, 11:20, 12:3, 12:16, 13:21, 14:9, 14:16, 15:7, 15:22, 15:23, 16:6, 16:17, 16:18, 18:21, 19:17, 19:21, 20:2, 20:21, 20:22, 21:25, 23:6, 23:14, 24:19, 24:23, 25:9, 25:10, 25:20, 25:24, 26:19, 27:7,

27:18, 28:11, 30:12
**Benson's** [2] - 12:1, 29:6
**bit** [1] - 4:5
**blah** [3] - 7:15
**blah-blah-blah** [1] - 7:15
**Blvd** [1] - 1:18
**body** [1] - 5:8
**bold** [2] - 26:22, 27:4
**bold-face** [1] - 27:4
**bold-faced** [1] - 26:22
**Brennan** [1] - 16:10
**Brennan's** [1] - 16:9
**Brice** [5] - 9:16, 10:5, 32:6, 32:12, 32:16
**BRICE** [1] - 9:16
**Brice's** [2] - 32:11, 32:14
**brief** [6] - 11:3, 12:6, 12:13, 15:7, 24:16, 29:16
**briefing** [1] - 22:4
**briefly** [1] - 34:5
**brought** [1] - 9:1
**Building** [1] - 1:18
**bunch** [1] - 31:14
**burden** [2] - 27:19, 33:5
**business** [1] - 5:10
**buying** [3] - 27:13, 27:16
**BY** [1] - 1:22

**C**

**Cameron** [24] - 5:13, 6:5, 6:20, 7:24, 8:5, 8:10, 8:15, 10:11, 10:16, 12:16, 16:6, 16:17, 16:18, 23:14, 24:18, 25:9, 25:10, 25:20, 25:24, 26:18, 27:7, 27:18, 28:11, 30:11
**cannot** [1] - 12:7
**canvass** [1] - 5:4
**CASE** [1] - 1:2
**case** [49] - 3:21, 3:23, 4:2, 4:4, 4:7, 4:8, 4:16, 4:20, 4:21, 5:13, 6:1, 6:12, 8:18, 9:14, 9:20, 10:8, 11:3, 11:10, 12:7, 12:8, 14:4, 14:4, 15:6, 15:17, 15:25, 17:16, 21:5, 21:6, 27:1, 27:3, 27:9, 27:13, 28:15, 29:7, 29:12, 30:2, 30:3, 30:11, 30:15, 31:23, 32:1, 32:3, 32:4, 32:6, 32:23, 33:8, 33:23
**cases** [8] - 7:21, 8:19, 16:4, 23:4, 24:19, 25:1, 26:9, 31:24
**center** [1] - 12:7
**certain** [3] - 6:25, 13:12, 19:1
**certainly** [3] - 19:20, 29:15, 33:7
**certify** [1] - 35:3

**cetera** [1] - 28:6
**challenged** [1] - 18:2
**changed** [1] - 21:24
**Chapman** [2] - 14:21, 15:1
**charge** [1] - 25:4
**chargeable** [3] - 6:18, 22:17, 33:15
**chezky@rodallaw.com** [1] - 1:15
**chief** [37] - 5:22, 7:5, 7:17, 8:12, 8:16, 8:24, 9:4, 10:12, 10:13, 10:21, 10:22, 12:25, 13:6, 13:7, 13:17, 13:20, 14:10, 19:21, 19:24, 20:11, 20:14, 20:18, 20:21, 20:22, 22:1, 22:5, 22:11, 23:20, 23:24, 27:22, 27:25, 28:5, 28:19, 30:17, 33:18
**Chief** [1] - 26:14
**chief's** [3] - 27:18, 30:13, 30:17
**chiefs** [4] - 10:6, 32:13, 32:15, 32:19
**Circuit** [12] - 7:22, 8:19, 8:23, 9:15, 9:22, 17:13, 19:14, 23:3, 31:24, 32:24, 34:6, 34:8
**circuits** [1] - 19:15
**circumstantial** [2] - 12:7, 17:17
**citation** [2] - 4:5, 8:21
**cite** [3] - 4:20, 9:16, 31:25
**cited** [3] - 3:21, 7:21, 17:14
**cites** [1] - 4:20, 10:2, 10:7
**CITY** [2] - 1:6, 1:17
**city** [44] - 5:13, 5:22, 6:4, 6:12, 6:13, 6:25, 7:2, 7:8, 7:19, 9:2, 9:4, 9:10, 10:10, 10:11, 10:20, 10:25, 11:1, 11:14, 13:13, 13:19, 15:3, 15:8, 15:20, 15:24, 16:1, 16:5, 16:12, 17:3, 17:5, 17:6, 18:21, 18:24, 19:1, 21:3, 21:25, 22:15, 24:12, 24:24, 25:4, 26:10, 29:22, 29:24, 30:16
**City** [7] - 2:7, 4:3, 5:15, 8:24, 17:4, 26:23, 33:25
**city's** [1] - 6:4
**claim** [1] - 13:14
**claimed** [2] - 9:21, 13:16
**claiming** [2] - 13:11
**claims** [2] - 10:15, 32:10
**clear** [6] - 5:16, 10:24, 23:11, 23:14, 28:4, 30:16
**client** [3] - 3:7, 13:10, 13:11, 14:8, 18:19, 29:21
**client's** [1] - 18:14
**Clifton** [4] - 8:21, 9:4, 10:8, 32:4

**Clifton's** [1] - 9:9, 9:12
**Clinton** [1] - 32:3
**closing** [1] - 15:21
**coming** [2] - 4:12, 28:22
**Company** [1] - 17:14
**complain** [1] - 13:12
**complained** [1] - 31:14
**complaining** [4] - 6:25, 8:12, 25:12, 25:15
**complaint** [2] - 13:6, 21:8
**complaints** [4] - 19:8, 19:10, 22:6, 24:12
**complete** [1] - 32:2
**COMPLETED** [1] - 35:9
**concerning** [2] - 11:9, 21:5
**concerns** [2] - 14:21, 33:1
**concluded** [1] - 34:12
**concurrence** [1] - 16:9
**conduct** [4] - 7:10, 16:25, 30:7, 33:12
**confident** [1] - 5:6
**conformance** [1] - 33:13
**constitute** [1] - 9:24
**constitution** [1] - 3:19
**constitutional** [1] - 6:13
**contemplates** [1] - 6:8
**contention** [1] - 11:20
**context** [6] - 4:14, 4:16, 4:22, 14:22, 15:23, 24:16
**contrary** [2] - 8:17, 10:15
**controlling** [1] - 32:23
**conversation** [4] - 19:23, 24:6, 24:15, 25:6
**COOKE** [1] - 1:9
**correct** [5] - 7:20, 13:18, 20:16, 20:20, 26:2
**Counsel** [6] - 2:16, 11:10, 17:21, 24:11, 25:25, 34:2
**counsel** [10] - 2:21, 3:3, 15:21, 16:8, 22:13, 27:21, 33:1, 33:9, 33:20, 34:4
**county** [1] - 9:24
**coupled** [1] - 26:20
**course** [2] - 16:5, 31:10
**COURT** [71] - 1:1, 1:10, 2:3, 2:7, 2:13, 2:16, 2:23, 2:25, 3:7, 3:17, 6:24, 7:2, 7:5, 10:18, 11:6, 11:9, 11:14, 11:19, 12:3, 12:24, 13:5, 13:10, 13:16, 13:19, 13:25, 14:4, 14:7, 14:16, 14:23, 15:1, 15:3, 15:13, 16:19, 17:3, 17:8, 17:21, 18:3, 18:5, 18:14, 18:16, 18:21, 18:24, 19:5, 19:10, 20:9, 20:14, 20:17, 20:21, 20:25, 21:10, 21:13, 21:16, 22:3, 22:19, 22:24, 23:17, 23:20, 24:3, 25:25, 26:4, 26:8, 27:21, 27:25, 28:7, 28:18, 28:24,

29:3, 29:17, 30:24, 32:25, 34:4
**Court** [25] - 1:22, 3:15, 4:4, 4:7, 4:23, 5:16, 6:11, 9:8, 11:12, 11:24, 12:2, 12:7, 12:11, 14:2, 17:7, 18:6, 23:12, 23:13, 27:11, 27:17, 29:5, 31:8, 32:9, 32:22, 34:8
**court** [3] - 2:2, 3:1, 5:8
**Court's** [3] - 2:18, 4:3, 16:7
**courtroom** [1] - 3:2
**cover** [1] - 14:10
**crashed** [1] - 19:4
**create** [1] - 29:18
**credibility** [1] - 18:6
**Crew** [1] - 19:1
**crux** [1] - 20:19
**custom** [4] - 4:10, 11:2, 25:17

**D**

**Damian** [1] - 2:9
**DAMIAN** [1] - 1:17
**Dania** [1] - 1:14
**Danny** [1] - 19:1
**date** [1] - 17:1
**DATE** [1] - 35:9
**dates** [1] - 19:6
**days** [1] - 29:25
**dealing** [1] - 23:25
**December** [1] - 16:2
**decide** [3] - 18:6, 24:8, 25:19
**decided** [4] - 4:7, 9:15, 24:13, 26:16
**decision** [27] - 3:8, 4:10, 4:16, 4:24, 5:14, 5:21, 6:16, 6:17, 6:19, 6:21, 7:10, 7:18, 7:24, 9:6, 10:1, 10:22, 13:22, 22:16, 22:19, 25:11, 30:16, 30:18, 32:12, 32:18, 33:10, 33:14
**decisionmaker** [10] - 3:15, 3:23, 5:12, 5:23, 6:4, 6:7, 7:6, 7:8, 16:24, 26:12
**decisionmaking** [2] - 3:5, 7:11
**decisions** [1] - 22:7
**declaration** [4] - 12:20, 15:17, 28:14, 29:13
**defendant** [2] - 1:6, 27:21
**DEFENDANT** [1] - 1:16
**Defendant's** [1] - 2:19
**defendant's** [3] - 12:21, 17:15, 33:25
**defendants** [1] - 33:4
**deliberate** [1] - 26:23
**demonstrate** [2] - 17:19, 17:25

**demoted** [1] - 9:20
**department** [5] - 13:13, 14:24, 15:1, 28:8, 29:23
**deposed** [1] - 12:23
**deposition** [4] - 12:1, 12:18, 23:11, 23:12
**depositions** [1] - 20:4
**deputy** [5] - 10:6, 10:13, 10:21, 13:7, 32:13
**desk** [1] - 25:5
**despite** [1] - 12:19
**detainee** [1] - 8:1
**determined** [1] - 3:16
**different** [3] - 11:11, 27:9, 29:11
**differentiate** [1] - 23:7
**direct** [2] - 5:8, 11:24
**directly** [1] - 6:14
**disagree** [1] - 22:24
**disagreement** [1] - 22:25
**disallowed** [1] - 22:23
**disciplinary** [1] - 17:8
**disciplined** [1] - 27:6
**discrimination** [4] - 17:17, 25:16, 25:18, 26:9
**discriminatory** [1] - 21:22
**discuss** [1] - 3:4
**discussed** [5] - 30:19, 31:8, 33:9, 33:17
**discussion** [2] - 30:13, 33:3
**dismissal** [1] - 18:20
**dismissed** [1] - 25:2
**disparate** [1] - 27:1
**dispute** [5] - 5:25, 6:6, 16:23, 16:24, 21:13
**disputed** [1] - 21:18
**DISTRICT** [3] - 1:1, 1:1, 1:10
**district** [1] - 9:15
**District** [4] - 2:12, 7:22, 7:23, 8:23
**districts** [1] - 23:4
**Docket** [4] - 2:20, 12:21, 33:5, 33:24
**doctrine** [1] - 19:13
**documents** [1] - 27:4
**down** [8] - 12:13, 17:21, 17:22, 23:5, 23:9, 24:18
**draw** [1] - 18:9

**E**

**earth** [2] - 28:1, 28:19
**easier** [1] - 2:25
**either** [1] - 23:7
**employer's** [1] - 18:2
**employment** [1] - 4:16
**end** [1] - 18:18
**ended** [1] - 6:4
**engaged** [1] - 14:8

**entire** [2] - 29:21, 31:10
**entitled** [4] - 10:10, 17:18, 17:24, 35:4
**entity** [1] - 9:22
**Entry** [4] - 2:20, 12:21, 33:6, 33:24
**escape** [1] - 16:13
**ESQ** [3] - 1:12, 1:16, 1:17
**essentially** [1] - 24:20
**establish** [1] - 6:12
**esteemed** [1] - 15:21
**et** [2] - 1:17, 28:6
**evaluate** [1] - 32:16
**event** [4] - 3:22, 18:19, 23:15, 31:2
**evidence** [23] - 5:12, 7:9, 7:24, 8:4, 8:15, 8:17, 9:12, 10:4, 10:11, 10:20, 12:7, 14:1, 17:17, 17:19, 17:25, 19:7, 20:7, 22:25, 25:10, 25:21, 30:11, 33:16, 33:20
**exact** [1] - 32:21
**exactly** [7] - 4:18, 6:8, 7:20, 7:23, 10:9, 22:22, 30:1
**examine** [1] - 29:23
**example** [4] - 12:17, 13:9, 14:15, 23:6
**excerpt** [1] - 32:3
**excessive** [5] - 13:20, 20:3, 20:18, 22:9, 23:21
**excuse** [1] - 22:4
**exercise** [3] - 4:17, 9:21, 14:5
**exercised** [2] - 13:12, 31:15
**exercising** [2] - 21:8, 33:19
**existence** [2] - 17:19, 18:1
**expect** [1] - 29:20
**experience** [1] - 32:19
**experiences** [1] - 3:1
**explained** [1] - 4:21
**explanation** [6] - 16:17, 16:20, 28:12, 31:5, 31:17, 31:21
**extent** [1] - 5:24
**extraneous** [1] - 20:25

**F**

**F.3d** [5] - 8:21, 9:16, 17:14, 32:4, 32:7
**face** [1] - 27:4
**faced** [1] - 26:22
**facie** [1] - 17:16
**facing** [1] - 24:24
**fact** [26] - 8:3, 12:19, 13:4, 15:5, 16:18, 16:23, 16:24, 17:20, 18:1, 18:7, 19:2, 21:14, 21:18, 21:22, 22:22, 24:18, 24:21, 25:22, 26:21, 28:15, 29:11, 29:19, 29:24,

30:6, 32:1
**factor** [1] - 32:11
**facts** [13] - 3:13, 8:4, 8:7, 8:10, 11:15, 11:24, 12:17, 14:19, 21:19, 23:14, 26:22, 27:5, 33:23
**factual** [3] - 5:4, 30:10, 33:16
**fairly** [1] - 19:1
**false** [1] - 31:19
**Farley** [1] - 17:13
**fault** [1] - 2:18
**FCRR** [2] - 1:22, 35:9
**February** [4] - 17:2, 18:11, 18:15, 18:20
**fell** [2] - 27:14, 27:15
**few** [3] - 3:25, 19:15, 29:25
**file** [2] - 26:8, 26:19
**filed** [9] - 12:10, 12:20, 15:16, 15:25, 16:2, 16:5, 18:18, 29:13, 30:2
**filing** [1] - 19:25, 24:1
**filling** [1] - 23:22
**final** [16] - 3:5, 3:15, 3:20, 3:23, 4:11, 4:12, 5:1, 5:12, 6:4, 6:6, 6:19, 7:8, 9:2, 15:9, 18:20, 26:12
**fire** [8] - 13:22, 16:17, 21:25, 23:18, 24:13, 26:16, 27:18, 27:19
**fired** [21] - 3:13, 6:24, 7:2, 7:6, 7:15, 12:15, 13:11, 13:17, 13:20, 20:3, 20:9, 20:11, 20:15, 21:1, 21:2, 23:10, 25:24, 27:2, 29:8, 31:14, 33:18
**fires** [3] - 7:15, 13:22, 22:5
**firing** [7] - 3:10, 9:20, 10:22, 11:17, 11:21, 12:4, 14:11, 16:21, 19:11, 20:19, 20:22, 21:7, 22:7, 23:4, 28:21, 29:21, 29:24
**firm** [1] - 30:22
**First** [14] - 4:17, 7:6, 8:5, 8:6, 9:21, 10:14, 11:22, 13:12, 14:7, 21:8, 30:14, 31:15, 33:18, 33:19
**first** [5] - 2:16, 7:5, 8:21, 10:23, 30:6
**five** [1] - 27:11
**FL** [3] - 1:14, 1:19, 1:23
**FLORIDA** [1] - 1:1
**focused** [1] - 24:16
**focusing** [1] - 14:2
**following** [2] - 2:2, 18:9
**FOR** [3] - 1:8, 1:12, 1:16
**force** [5] - 13:20, 20:3, 20:18, 22:9, 23:21
**foregoing** [1] - 35:3
**foreseeing** [1] - 11:4

**format** [1] - 12:11
**Fort** [2] - 1:19, 2:12
**fortune** [1] - 16:3
**forward** [1] - 2:14
**front** [1] - 24:15

**G**

**Gainesville** [1] - 8:24
**GARDENS** [2] - 1:6, 1:17
**Gardens** [7] - 2:8, 5:15, 15:15, 17:4, 26:24, 27:1, 34:1
**Gattis** [7] - 9:15, 9:20, 10:4, 32:1, 32:6, 32:10, 32:17
**GATTIS** [1] - 9:15
**general** [2] - 4:8, 4:20
**generally** [1] - 3:13
**generate** [1] - 32:16
**genuine** [4] - 16:23, 17:20, 18:1, 29:18
**given** [2] - 5:9, 27:10
**GIZELLA** [2] - 1:22, 35:9
**gizella_baan** [1] - 1:24
**gizella_baan-proulx@flsd .uscourts.gov** [1] - 1:24
**governed** [1] - 31:23
**government's** [1] - 5:10
**granted** [1] - 33:24
**Griffin** [1] - 1:13
**ground** [2] - 27:14, 27:15
**guess** [2] - 3:15, 21:23
**guidance** [1] - 34:9
**guise** [2] - 7:7, 14:9
**gun** [3] - 29:2, 29:3, 29:4
**guy** [5] - 19:24, 20:22, 23:20, 23:25, 31:19

**H**

**handled** [3] - 13:21, 15:21, 29:9
**hear** [2] - 10:18, 29:17
**hearing** [4] - 21:24, 26:1, 33:18, 34:12
**heart** [1] - 7:12
**held** [3] - 2:2, 9:5, 17:13
**hereby** [1] - 35:3
**Hill** [4] - 8:21, 9:11, 10:7, 32:3
**hill** [1] - 9:2
**himself** [2] - 15:22, 32:16
**hired** [2] - 18:10, 18:12
**history** [1] - 4:5
**Honor** [20] - 2:5, 2:9, 2:22, 2:13, 7:20, 9:1, 10:9, 10:23, 14:13, 14:19, 16:1, 17:11, 18:17, 19:12, 21:20, 24:14, 25:13, 26:3, 27:10, 34:3
**Honor's** [1] - 30:6

**HONORABLE** [1] - 1:9
**hope** [1] - 34:7
**hour** [1] - 2:18

## I

**idea** [3] - 13:1, 20:5, 23:14
**identified** [1] - 6:11
**ignoring** [1] - 30:22
**illegal** [1] - 9:10
**important** [3] - 4:2, 4:6, 15:5
**importantly** [2] - 31:22, 33:20
**improper** [4] - 8:16, 9:10, 9:13, 10:6
**impropriety** [1] - 30:8
**inaud** [2] - 24:7, 25:17
**incident** [17] - 3:8, 3:9, 3:12, 4:14, 7:25, 17:1, 18:14, 18:16, 18:19, 20:15, 20:18, 20:19, 20:23, 22:8, 22:20, 25:21
**incidents** [1] - 6:25
**include** [1] - 5:7
**including** [1] - 31:12
**inconceivable** [1] - 12:13
**indeed** [1] - 24:23
**indication** [1] - 15:13
**indications** [1] - 19:20
**individuals** [1] - 32:17
**infer** [3] - 21:3, 21:17, 24:23
**inference** [11] - 18:8, 18:9, 19:6, 21:16, 21:17, 29:6, 32:11, 33:21, 33:22
**inferences** [19] - 21:10, 21:18, 23:1, 23:2, 23:5, 24:17, 25:8, 27:9, 27:10, 27:11, 29:18, 29:23, 30:8, 30:9, 31:4, 32:9, 32:21, 33:22
**information** [2] - 15:14, 20:11
**instance** [1] - 4:11
**Insurance** [1] - 17:14
**intend** [1] - 16:15
**intended** [1] - 23:7
**interested** [1] - 3:16
**interesting** [1] - 8:25
**interestingly** [2] - 4:19, 8:3
**intermediate** [1] - 7:11
**International** [1] - 1:18
**involved** [5] - 8:23, 19:17, 19:21, 24:19, 24:24
**involves** [1] - 20:17
**involving** [2] - 7:25, 22:8
**issue** [11] - 3:3, 3:4, 11:10, 11:11, 16:23, 17:20, 18:1, 20:4, 21:18, 29:19, 33:2
**issues** [2] - 8:13, 13:13

**italics** [2] - 9:7, 10:2
**itself** [1] - 9:22

## J

**January** [6] - 16:2, 16:4, 18:19, 26:1, 26:5, 26:10
**Johnson** [1] - 1:17
**join** [1] - 17:3
**joined** [1] - 17:5
**JOSE** [2] - 1:4, 1:13
**Jose** [1] - 2:4
**Judge** [1] - 31:2
**JUDGE** [1] - 1:10
**Judgement** [1] - 2:20
**judges** [1] - 26:22
**JUDGMENT** [1] - 1:8
**judgment** [9] - 5:17, 10:10, 16:22, 17:18, 17:25, 18:6, 29:19, 32:19, 33:25
**Judgment** [2] - 6:2, 33:5
**judicial** [1] - 24:17
**June** [1] - 15:6
**jury** [18] - 15:19, 16:15, 16:16, 24:8, 24:9, 24:22, 25:8, 25:16, 25:19, 25:23, 26:20, 27:12, 27:17, 27:20, 28:4, 28:11, 28:15, 32:22
**Justice** [2] - 16:8, 16:10
**justifiable** [1] - 14:11

## K

**keep** [2] - 22:12, 24:4
**key** [2] - 15:5, 15:16
**knowing** [1] - 19:22
**knowledge** [6] - 3:18, 6:11, 10:12, 10:21, 16:21, 29:10
**known** [1] - 6:21
**knows** [1] - 13:21

## L

**language** [3] - 8:25, 9:1, 10:2
**last** [3] - 6:3, 17:12, 17:23
**lateness** [1] - 2:18
**Lauderdale** [1] - 1:19
**law** [13] - 3:5, 5:2, 5:6, 5:9, 11:14, 16:19, 16:21, 19:15, 30:15, 32:23, 33:23, 34:6
**Law** [1] - 1:13
**lawsuit** [3] - 3:9, 3:11, 30:20
**lawsuits** [3] - 18:18, 25:1, 29:11
**lead** [1] - 27:12
**leading** [2] - 26:13, 26:18
**least** [5] - 27:12, 28:5, 31:6, 31:16, 31:20
**leave** [3] - 15:11, 17:10,

32:19
**led** [1] - 15:20
**left** [1] - 11:1
**legal** [1] - 7:13
**lengthy** [1] - 6:1
**letter** [18] - 8:11, 8:12, 10:16, 10:21, 11:15, 11:16, 11:17, 13:6, 13:8, 13:9, 13:25, 14:2, 14:3, 14:14, 16:4, 16:21, 18:19
**level** [1] - 7:5
**liability** [7] - 3:4, 7:18, 16:11, 16:14, 24:25, 26:12, 26:17
**liable** [2] - 9:11, 9:23
**lie** [2] - 27:4
**lied** [4] - 22:12, 27:2, 28:20
**lies** [2] - 22:12, 26:22
**light** [1] - 5:5
**lighten** [1] - 31:2
**limited** [2] - 3:3, 19:15
**list** [3] - 13:3, 32:14, 32:16
**listen** [2] - 24:9, 28:4
**litigation** [1] - 5:5
**local** [2] - 5:7, 5:10
**look** [1] - 22:14
**looked** [1] - 28:13
**looking** [1] - 25:25
**looks** [2] - 28:16
**lost** [1] - 30:20
**Louis** [1] - 4:3
**lying** [2] - 20:17, 27:8

## M

**ma'am** [2] - 3:6, 7:1
**Macon** [1] - 26:15
**maintains** [2] - 6:24, 7:2
**major** [1] - 27:3
**Major** [1] - 20:2
**majors** [4] - 19:20, 26:15, 28:6
**man** [1] - 12:14
**manager** [35] - 5:13, 5:22, 5:23, 6:4, 6:12, 7:9, 7:13, 9:2, 10:11, 10:20, 13:19, 15:24, 16:12, 17:3, 17:5, 17:6, 18:10, 18:11, 18:13, 18:22, 18:24, 19:1, 19:7, 21:3, 22:15, 24:12, 25:4, 28:1, 28:20, 28:21, 28:25, 29:24, 30:16, 33:17
**manager's** [1] - 15:3
**manual** [3] - 5:15, 5:19, 6:8
**March** [3] - 1:5, 15:12, 17:11
**MARCIA** [1] - 1:9
**Mason** [2] - 14:18, 14:20
**mason** [1] - 14:20
**material** [3] - 11:24, 16:23,

29:19
**matter** [2] - 33:2, 35:5
**matters** [1] - 9:3
**mean** [2] - 20:9, 29:19
**meaning** [1] - 3:7
**means** [2] - 14:12, 16:12
**meant** [1] - 23:8
**measure** [1] - 33:12
**memoranda** [1] - 31:12
**memorandum** [1] - 7:21
**mere** [1] - 32:14
**merely** [2] - 21:21, 25:10
**met** [2] - 20:8, 33:4
**Miami** [9] - 1:23, 1:23, 2:8, 5:15, 15:15, 17:4, 26:24, 27:1, 34:1
**MIAMI** [3] - 1:2, 1:6, 1:17
**Michael** [1] - 2:9
**MICHAEL** [1] - 1:16
**microphone** [1] - 2:23
**middle** [3] - 2:11, 7:16, 19:3
**Middle** [1] - 2:11
**Mike** [1] - 30:23
**military** [1] - 12:14
**Miller** [1] - 26:14
**minute** [3] - 8:9, 9:17, 13:16
**mis** [1] - 22:21
**mis-agreeing** [1] - 22:21
**misconduct** [1] - 7:3
**mispronounce** [1] - 33:8
**misrepresent** [1] - 23:8
**misrepresentations** [1] - 26:23
**mistakes** [1] - 12:12
**Monell** [1] - 4:10
**most** [1] - 27:25
**MOTION** [1] - 1:8
**motion** [4] - 5:18, 10:25, 31:8, 33:25
**Motion** [3] - 2:19, 6:2, 33:5
**motivation** [1] - 6:22
**motive** [1] - 7:17
**motives** [6] - 7:11, 8:16, 9:10, 9:13, 10:6, 30:13
**MR** [68] - 2:5, 2:9, 2:15, 2:22, 2:24, 3:6, 3:11, 3:18, 7:1, 7:4, 7:20, 10:23, 11:8, 11:13, 11:18, 11:23, 12:5, 13:1, 13:8, 13:15, 13:18, 13:24, 14:1, 14:6, 14:13, 14:18, 14:25, 15:2, 15:5, 15:16, 17:2, 17:5, 17:10, 17:23, 18:4, 18:12, 18:15, 18:17, 18:23, 18:25, 19:9, 19:12, 20:13, 20:16, 20:20, 20:24, 21:9, 21:12, 21:15, 21:20, 22:18, 22:21, 23:2, 23:18, 23:23, 24:14, 26:3, 26:7, 26:11, 27:24, 28:2, 28:10, 28:22, 29:1, 29:5,

30:6, 31:1, 34:3
  **multiple** [4] - 13:2, 20:4, 24:25, 25:1
  **municipal** [3] - 3:4, 26:12, 26:17
  **municipality** [2] - 6:18, 22:17
  **municipality's** [1] - 33:11
  **municipals** [1] - 16:11
  **Murdoch** [1] - 1:17
  **must** [3] - 10:4, 16:20, 16:23
  **Mutual** [1] - 17:14
  **Myers** [1] - 2:12

**N**

  **name** [2] - 20:8, 30:1
  **names** [1] - 32:20
  **Nationwide** [1] - 17:13
  **native** [1] - 12:11
  **natural** [1] - 12:10
  **necessary** [1] - 6:11
  **need** [7] - 18:7, 19:25, 24:1, 29:3, 30:9
  **never** [9] - 8:10, 10:16, 10:17, 10:25, 11:2, 20:8, 31:16
  **next** [3] - 15:8, 15:9, 26:4
  **NO** [1] - 1:2
  **nonsense** [1] - 31:14
  **North** [1] - 1:23
  **Northern** [3] - 7:23, 8:22, 8:23
  **nothing** [3] - 11:17, 26:20, 32:13
  **November** [1] - 15:25
  **Number** [1] - 33:24
  **number** [1] - 9:18
  **numberless** [1] - 5:4
  **numerous** [2] - 23:2, 23:3

**O**

  **obviously** [1] - 8:20
  **occurred** [2] - 15:12, 18:20
  **October** [7] - 15:24, 17:6, 18:10, 18:13, 18:18, 18:23, 19:2
  **OF** [3] - 1:1, 1:6, 1:17
  **offered** [2] - 8:17, 28:3
  **office** [1] - 15:3
  **Officer** [11] - 2:4, 3:8, 8:1, 12:14, 14:15, 16:3, 17:9, 25:15, 25:22, 29:12, 30:2
  **officer** [3] - 22:12, 23:21, 27:2
  **OFFICER** [2] - 1:4, 1:13
  **officers** [4] - 23:25, 24:25, 27:6, 29:9

  **official** [2] - 5:1, 5:8
  **official's** [1] - 33:12
  **once** [2] - 20:8, 31:16
  **one** [23] - 5:21, 7:22, 8:19, 12:13, 13:9, 14:14, 15:5, 19:14, 20:4, 21:20, 23:23, 26:9, 27:9, 27:15, 29:13, 30:24, 31:6, 31:11, 31:16, 31:20, 31:23, 33:21
  **open** [1] - 2:2
  **opportunity** [2] - 28:4, 28:10
  **opposing** [1] - 16:8
  **oral** [1] - 33:3
  **order** [4] - 3:15, 3:19, 6:12, 16:22
  **ordinances** [1] - 5:7
  **ought** [1] - 31:7
  **outright** [1] - 26:22
  **overhears** [1] - 24:6
  **overt** [1] - 24:15
  **own** [6] - 8:3, 8:9, 28:13, 29:6, 29:7

**P**

  **PA** [2] - 1:13, 1:17
  **package** [1] - 20:11
  **page** [9] - 4:24, 5:3, 6:3, 6:16, 9:18, 14:19, 22:14, 29:16, 33:9
  **pain** [1] - 22:5
  **paper** [2] - 22:7, 23:10
  **papers** [1] - 33:10
  **paragraph** [3] - 12:17, 13:4, 14:18
  **paragraphs** [1] - 11:25
  **parenthetical** [1] - 5:6
  **part** [2] - 6:13, 27:3
  **particular** [1] - 7:14
  **party** [1] - 24:6
  **pass** [1] - 2:10
  **past** [2] - 3:1, 16:22
  **peer** [1] - 30:8
  **Pembaur** [8] - 4:8, 4:13, 4:14, 4:15, 4:20, 4:21
  **Pembaur's** [1] - 4:25
  **pen** [1] - 23:9
  **pending** [2] - 25:2, 26:9
  **people** [1] - 6:3
  **permits** [1] - 32:10
  **person** [6] - 7:16, 7:17, 15:14, 22:8, 27:25, 30:25
  **personally** [1] - 15:8
  **personnel** [1] - 9:3
  **pertinent** [1] - 8:25
  **ph** [1] - 26:15
  **piece** [1] - 14:14
  **piled** [3] - 3:25, 8:8, 27:11
  **Piper** [3] - 2:9, 30:20, 30:23

  **PIPER** [13] - 1:16, 2:9, 2:15, 2:22, 2:24, 3:6, 3:11, 3:18, 7:1, 7:4, 7:20, 30:6, 31:1
  **piper@jambg.com** [1] - 1:20
  **place** [1] - 26:1
  **placed** [1] - 17:10
  **places** [1] - 7:7
  **plaintiff** [18] - 1:4, 3:21, 4:19, 6:1, 6:24, 8:7, 8:18, 10:15, 10:18, 10:19, 12:20, 17:18, 17:24, 31:10, 32:22, 33:21, 34:5, 34:7
  **PLAINTIFF** [1] - 1:12
  **plaintiff's** [7] - 8:3, 11:21, 11:24, 12:17, 14:19, 31:3
  **planet** [2] - 28:1, 28:19
  **pleading** [1] - 11:2
  **plurality** [2] - 16:9, 16:10
  **point** [9] - 12:7, 12:8, 12:12, 15:11, 16:9, 24:3, 26:11, 26:14, 32:21
  **pointed** [3] - 23:3, 23:4, 29:15
  **police** [15] - 4:14, 5:22, 7:3, 8:24, 9:4, 12:14, 14:23, 15:1, 15:15, 22:1, 23:21, 26:5, 28:8, 29:9, 29:22
  **police's** [1] - 21:5
  **policies** [2] - 5:9, 33:13
  **policy** [10] - 4:10, 5:14, 5:19, 6:7, 9:25, 11:2, 11:3, 25:16, 25:17, 27:8
  **policymaker** [6] - 3:20, 4:11, 4:12, 9:3, 9:25, 22:15
  **policymaker's** [1] - 9:23
  **policymakers** [5] - 6:17, 9:5, 33:11, 33:14
  **policymaking** [1] - 5:1
  **poorly** [1] - 32:15
  **poorly-rated** [1] - 32:15
  **position** [2] - 28:5, 31:13
  **possibility** [2] - 23:23, 23:24
  **possible** [1] - 31:4
  **postdate** [1] - 18:17
  **postdated** [1] - 4:21
  **Praprotnik** [18] - 3:21, 4:4, 4:7, 4:15, 4:21, 4:23, 6:8, 6:14, 6:15, 9:7, 10:3, 19:12, 19:14, 19:15, 19:16, 28:2, 31:24, 33:8
  **predates** [1] - 18:16
  **prepared** [2] - 2:21, 20:6
  **preparing** [1] - 30:2
  **present** [2] - 10:4, 31:7
  **presented** [3] - 9:11, 27:4, 32:22
  **presided** [1] - 16:1
  **pretext** [10] - 16:25, 21:21,

  25:10, 27:13, 27:16, 27:23, 27:25, 28:1, 28:13, 29:22
  **pretexted** [1] - 28:20
  **pretextual** [1] - 23:4
  **previous** [1] - 12:6
  **prima** [1] - 17:16
  **prisoner** [2] - 7:14, 13:21
  **procedures** [3] - 5:15, 5:19, 6:7
  **proceed** [2] - 2:19, 2:21
  **proceedings** [3] - 2:2, 17:8, 35:4
  **process** [3] - 5:20, 20:10, 31:11
  **proffer** [1] - 17:15
  **proffered** [2] - 18:2, 21:21
  **profiling** [2] - 8:13, 31:15
  **progeny** [1] - 19:14
  **proof** [2] - 4:10, 16:6
  **properly** [1] - 11:3
  **proposition** [2] - 4:9, 7:23
  **protect** [1] - 16:12
  **protected** [9] - 8:6, 14:8, 14:14, 14:16, 15:4, 15:18, 16:25, 25:12
  **PROULX** [1] - 1:22, 35:9
  **proulx@flsd.uscourts. gov** [1] - 1:24
  **prove** [2] - 6:17, 27:20
  **provided** [2] - 5:21, 8:11
  **provides** [1] - 5:19
  **purpose** [1] - 21:22
  **purposes** [3] - 3:5, 30:12, 33:5
  **put** [2] - 8:20, 14:22
  **puts** [1] - 4:15
  **pyramiding** [1] - 30:9

**Q**

  **quasi** [1] - 24:17
  **quasi-judicial** [1] - 24:17
  **questions** [3] - 4:3, 12:16, 23:13
  **Quik** [1] - 21:6
  **quote** [5] - 9:7, 17:11, 17:15, 32:5, 33:8

**R**

  **racial** [5] - 8:13, 25:15, 25:16, 25:17, 31:15
  **raised** [3] - 10:25, 11:5, 20:4
  **raising** [1] - 23:2
  **rated** [1] - 32:15
  **ratification** [9] - 6:18, 11:10, 19:13, 19:16, 22:17, 28:3, 30:5, 33:2, 33:15
  **ratified** [9] - 9:4, 10:6,

11:20, 12:4, 19:22, 26:13, 28:12, 30:16, 30:17
**ratifies** [2] - 7:10, 13:22
**ratify** [3] - 10:22, 24:2, 25:21
**ratifying** [3] - 25:9, 25:11, 25:20
**reaches** [1] - 21:7
**read** [7] - 3:14, 9:18, 23:11, 23:12, 23:13, 32:3, 32:6
**reading** [1] - 32:8
**real** [1] - 26:16
**realize** [1] - 21:10
**really** [15] - 3:12, 3:23, 4:2, 6:6, 10:19, 15:20, 19:12, 19:13, 21:1, 21:2, 21:23, 22:1, 26:19, 26:24
**reason** [9] - 3:12, 5:11, 10:24, 12:10, 19:22, 21:21, 22:3, 22:22, 25:22
**reasonable** [5] - 15:19, 16:20, 24:22, 25:8, 27:12
**reasonably** [1] - 16:16
**reasons** [2] - 17:15, 18:2
**reassignment** [1] - 32:18
**recognized** [1] - 4:23
**recognizing** [1] - 4:25
**recollections** [1] - 29:6
**recommendation** [4] - 10:5, 10:7, 26:5, 32:13
**recommended** [2] - 6:22, 32:17
**record** [17] - 2:3, 5:12, 5:16, 7:24, 8:21, 10:19, 11:20, 19:7, 22:25, 24:3, 24:10, 32:2, 32:10, 32:14, 33:16, 33:24, 34:4
**recorded** [1] - 19:23
**recording** [2] - 24:14, 25:7
**referenced** [2] - 12:22, 15:7
**references** [1] - 12:25
**referencing** [1] - 12:24
**regard** [1] - 26:24
**regarding** [2] - 11:2, 31:21
**regret** [1] - 11:3
**regulations** [1] - 5:7
**related** [3] - 7:3, 20:18, 33:2
**releasing** [1] - 33:25
**rely** [1] - 32:18
**relying** [1] - 22:9
**remember** [2] - 19:3, 30:1
**remiss** [1] - 2:10
**removed** [1] - 16:2
**repeatedly** [1] - 12:22
**replete** [2] - 27:5, 30:21
**reply** [2] - 7:21, 31:9
**report** [5] - 22:9, 22:12, 23:8, 27:19, 28:16
**REPORTED** [1] - 1:22

**reporter** [1] - 3:1
**Reporter** [2] - 1:22, 4:24
**reports** [2] - 23:22, 31:19
**represented** [1] - 15:8
**respectfully** [1] - 21:23
**respecting** [2] - 22:6, 25:14
**respects** [1] - 2:11
**responded** [1] - 11:14
**response** [5] - 4:19, 6:1, 6:3, 10:24
**responses** [1] - 30:21
**responsibile** [1] - 9:5
**responsibility** [1] - 5:9
**retained** [1] - 33:12
**retaliating** [1] - 10:14
**retaliation** [1] - 4:17
**retaliatory** [1] - 32:15
**review** [6] - 7:25, 12:19, 13:3, 20:6, 20:10, 33:10
**reviewed** [3] - 10:17, 13:1, 13:4
**reviewing** [1] - 30:8
**reviews** [1] - 7:9
**rid** [3] - 19:18, 19:25, 25:11
**rights** [5] - 4:18, 9:21, 31:15, 33:19
**Road** [1] - 1:13
**RODAL** [57] - 1:12, 2:5, 10:23, 11:8, 11:13, 11:18, 11:23, 12:5, 13:1, 13:8, 13:15, 13:18, 13:24, 14:1, 14:6, 14:13, 14:18, 14:25, 15:2, 15:5, 15:16, 17:2, 17:5, 17:10, 17:23, 18:4, 18:12, 18:15, 18:17, 18:23, 18:25, 19:9, 19:12, 20:13, 20:16, 20:20, 20:24, 21:9, 21:12, 21:15, 21:20, 22:18, 22:21, 23:2, 23:18, 23:23, 24:14, 26:3, 26:7, 26:11, 27:24, 28:2, 28:10, 28:22, 29:1, 29:5, 34:3
**Rodal** [2] - 1:13, 2:6
**Rosado** [27] - 2:4, 3:8, 8:1, 8:12, 10:14, 12:15, 13:20, 13:22, 14:15, 14:20, 15:14, 15:16, 16:3, 17:9, 20:8, 20:10, 21:7, 22:4, 22:5, 24:13, 24:22, 24:23, 25:15, 28:8, 29:12, 30:2, 33:18
**ROSADO** [2] - 1:4, 1:13
**Rosado's** [1] - 25:22
**RPR** [2] - 1:22, 35:9
**ruling** [1] - 4:25

**S**

**Sampson** [7] - 15:6, 15:13, 15:17, 15:20, 15:25, 25:1, 29:25

**Samuels** [1] - 21:5
**saw** [2] - 10:16, 28:14
**scenarios** [1] - 5:5
**second** [3] - 6:10, 14:19, 24:22
**secretary** [1] - 24:6
**section** [1] - 12:6
**see** [3] - 12:11, 12:12, 30:24
**sees** [2] - 7:9, 28:15
**sending** [1] - 16:3
**sent** [2] - 11:7, 18:19
**sentence** [1] - 17:23
**Sergeant** [2] - 14:18, 14:20
**sergeant** [1] - 14:23
**sets** [1] - 15:14
**setting** [2] - 5:9, 16:11
**settle** [1] - 15:20
**settled** [3] - 15:7, 25:3, 29:11
**settlement** [5] - 21:4, 24:20, 29:25, 30:3, 30:20
**shared** [1] - 14:21
**sheet** [1] - 12:6
**show** [8] - 10:20, 16:15, 21:20, 26:19, 26:21, 27:1, 28:10, 31:7
**showed** [2] - 26:21, 27:4
**sic** [4] - 21:5, 22:14, 29:18, 32:3
**sic)** [1] - 29:17
**sign** [1] - 16:13
**signed** [2] - 11:16, 15:9
**significant** [2] - 4:22, 5:11
**signs** [1] - 29:24
**simple** [1] - 3:23
**simply** [7] - 9:11, 12:13, 16:16, 15:23, 26:20, 28:11, 32:18
**Simpson** [1] - 29:25
**single** [1] - 4:11
**situation** [1] - 18:5
**six** [1] - 27:11
**slow** [1] - 17:21
**smoking** [2] - 29:1, 29:3
**somewhere** [2] - 24:10, 24:11
**sorry** [3] - 3:25, 31:2, 32:4
**sort** [2] - 7:11, 27:21
**SOUTHERN** [1] - 1:1
**Southern** [1] - 7:22
**speaks** [1] - 6:14
**specific** [5] - 4:16, 7:3, 12:16, 17:11, 23:13
**specifically** [17] - 4:23, 4:25, 6:15, 8:9, 8:13, 11:7, 11:23, 11:25, 12:9, 16:7, 16:8, 16:10, 25:15, 31:24, 32:8, 33:1, 33:7

**speech** [6] - 14:15, 14:16, 15:4, 15:18, 25:12, 32:11
**St** [1] - 4:3
**stand** [1] - 7:23
**standard** [2] - 7:13, 11:1
**stands** [1] - 19:12
**start** [2] - 17:9, 17:23
**state** [2] - 5:2, 5:6
**statement** [10] - 8:4, 8:7, 8:10, 11:24, 12:21, 13:4, 14:19, 23:14, 26:21, 27:5
**statements** [2] - 12:17, 29:8
**STATES** [2] - 1:1, 1:10
**States** [2] - 1:22, 4:4
**stating** [1] - 9:23
**step** [4] - 2:23, 5:21, 5:22, 21:20
**stern's** [1] - 2:10
**Sterns** [4] - 22:14, 29:17, 29:18, 30:23
**still** [3] - 25:2, 26:12, 31:23
**stood** [1] - 4:8
**Stop** [1] - 21:6
**straight** [1] - 27:5
**stress** [1] - 14:14
**strict** [1] - 27:8
**striking** [1] - 8:1
**stuff** [1] - 20:25
**subject** [1] - 33:10
**subordinate's** [6] - 6:17, 9:6, 9:25, 22:16, 33:10, 33:14
**sufficient** [4] - 17:16, 17:19, 17:25, 30:4
**suggest** [1] - 32:14
**suggested** [1] - 5:25
**Suite** [3] - 1:13, 1:18, 1:23
**Summary** [3] - 2:19, 6:2, 33:5
**SUMMARY** [1] - 1:8
**summary** [5] - 5:17, 16:22, 17:18, 17:24, 18:6, 29:19, 33:25
**Sunrise** [1] - 1:18
**supervisor** [1] - 14:22
**support** [4] - 5:17, 17:17, 22:25, 31:12
**supporting** [1] - 33:23
**supports** [1] - 11:20
**Supreme** [1] - 4:4
**survive** [3] - 17:18, 17:24, 29:19

**T**

**Tab** [1] - 5:17
**tag** [1] - 24:7
**term** [2] - 30:14, 31:5
**terminate** [1] - 5:21

**terminated** [1] - 31:13
**termination** [5] - 15:9, 21:21, 25:9, 26:1, 26:6
**terms** [4] - 4:7, 4:15, 6:9, 10:14
**THE** [73] - 1:1, 1:9, 1:12, 1:16, 2:3, 2:7, 2:13, 2:16, 2:23, 2:25, 3:7, 3:17, 6:24, 7:2, 7:5, 10:18, 11:6, 11:9, 11:14, 11:19, 12:3, 12:24, 13:5, 13:10, 13:16, 13:19, 13:25, 14:4, 14:7, 14:16, 14:23, 15:1, 15:3, 15:13, 16:19, 17:3, 17:8, 17:21, 18:3, 18:5, 18:14, 18:16, 18:21, 18:24, 19:5, 19:10, 20:9, 20:14, 20:17, 20:21, 20:25, 21:10, 21:13, 21:16, 22:3, 22:19, 22:24, 23:17, 23:20, 24:3, 25:25, 26:4, 26:8, 27:21, 27:25, 28:7, 28:18, 28:24, 29:3, 29:17, 30:24, 32:25, 34:4
**therefore** [3] - 10:4, 17:18, 17:24
**Thereupon** [1] - 34:12
**thinking** [2] - 11:10, 11:11
**thinks** [1] - 7:9
**third** [1] - 24:5
**three** [2] - 19:20, 32:15
**threshold** [1] - 29:15
**throughout** [3] - 12:8, 15:7, 31:10
**today** [2] - 2:15, 33:4
**together** [2] - 2:14, 17:16
**took** [4] - 12:1, 15:24, 23:9, 26:1
**totally** [2] - 20:10, 28:20
**town** [1] - 19:25
**transcript** [2] - 23:11, 23:12
**transcription** [1] - 35:4
**treat** [1] - 4:9
**treated** [2] - 7:14, 26:25
**treatment** [1] - 27:1
**tremendous** [1] - 24:25
**trial** [1] - 2:11
**trials** [1] - 30:7
**true** [1] - 21:22
**truth** [3] - 17:20, 18:1, 26:24
**truthfully** [1] - 23:22
**trying** [1] - 8:7
**two** [15] - 2:14, 4:7, 4:15, 5:22, 7:21, 8:19, 9:14, 16:4, 18:18, 23:25, 29:13, 30:24, 31:22, 31:24, 32:17

---

**U**

**U.S** [2] - 4:5, 4:24

---

**ultimate** [4] - 5:14, 5:23, 7:10, 28:24
**unbeknownst** [1] - 7:8
**unconstitutional** [2] - 9:24
**uncontested** [2] - 8:4, 8:10
**under** [2] - 3:20, 18:25
**United** [2] - 1:22, 4:4
**UNITED** [2] - 1:1, 1:10
**unjustifiable** [1] - 14:12
**unlawful** [1] - 26:9
**up** [20] - 2:23, 2:24, 4:1, 8:8, 9:1, 9:17, 10:13, 15:14, 16:11, 24:24, 26:13, 26:18, 27:5, 27:11, 28:17, 29:14, 31:2, 31:19, 32:2
**upheld** [1] - 26:5
**urge** [1] - 32:22

---

**V**

**valid** [1] - 5:7
**van** [6] - 17:1, 20:15, 20:23, 22:8, 22:20, 27:15
**verdict** [1] - 16:1
**versus** [7] - 4:4, 8:21, 9:16, 10:7, 17:13, 32:3, 32:6
**video** [14] - 12:10, 12:12, 12:19, 12:22, 12:24, 12:25, 13:2, 13:17, 20:7, 25:24, 28:14, 28:15, 29:7, 31:18
**violated** [1] - 3:19
**violation** [2] - 6:13, 11:21
**vs** [1] - 1:5

---

**W**

**wait** [1] - 13:16
**walk** [2] - 28:1, 28:19
**wants** [1] - 32:22
**watching** [1] - 29:7
**whatsoever** [1] - 10:12
**White** [4] - 9:2, 9:3, 9:8, 9:12
**whole** [1] - 7:12
**willfully** [4] - 23:7, 23:8, 23:9, 23:10
**wish** [2] - 25:7, 29:2
**witness** [2] - 18:7, 24:5
**word** [2] - 12:13, 27:15
**words** [1] - 9:7
**world** [1] - 27:23
**worst** [1] - 28:19
**writes** [1] - 22:7
**written** [2] - 10:21, 31:12
**wrote** [2] - 10:16, 23:9

---

**Y**

**years** [1] - 9:14
**Yechezkel** [1] - 2:5
**YECHEZKEL** [1] - 1:12

---

**Z**

**zero** [3] - 7:24, 8:4, 30:11